Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: March 5th, 2018**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:17-bk-20203 |
| ROBERT LEE BLACKWELL and SHIRLEY MAE BLACKWELL, | CHAPTER 13 |
| Debtors. | JUDGE FRANK W. VOLK |

## MEMORANDUM OPINION AND ORDER

Pending is the Confirmation of Debtors' Chapter 13 Plan (the "Plan") [Dckt. 5] and the Objection by Vanderbilt Mortgage and Finance, Inc. (the "Objection") [Dckt. 20].

The Plan included a Motion to Value Secured Property (the "Motion to Value"). On February 7, 2018, the Court heard the Motion to Value, which included certain testimony and exhibits. At that hearing, the Court entered a bench ruling, which is memorialized within.

The Court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052.

### I.

Based upon consideration of the evidence admitted at the hearing, the Court makes the following findings of fact by a preponderance evidence:

The Debtors, Robert Lee Blackwell and Shirley Mae Blackwell, became indebted to Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") on or about August 25, 2008. The indebtedness arose from a Manufactured Home Promissory Note, Security Agreement and Disclosure Statement (the "Loan"). The indebtedness was secured by placing a lien on the Certificate of Title of a 2009 Fleetwood manufactured home (the "Manufactured Home") and a deed of trust on the land located at 1641 Warbutton Road, Clendenin, West Virginia (the "Real Estate"). The original principal amount of the indebtedness was $57,952.88. The repayment terms were as follows: 240 monthly payments of $572.37.

The Blackwells defaulted on the Loan in August of 2015 and their outstanding indebtedness currently stands at $67,847.37. The Blackwells filed a Chapter 13 petition on April 13, 2017. The Blackwells simultaneously filed a Chapter 13 plan that purported to value the Manufactured Home at $5,000.00, and provided for payment of $5,527.20 to Vanderbilt over the life of the plan. In addition, the Plan purported to value the Real Estate at $6,000, and provided for payment of $6,632.64 to Vanderbilt over the life of the plan. Vanderbilt filed a Proof of Claim on April 25, 2017, listing the secured indebtedness as $66,780.99 and arrearages of $13,770.69. Attached to that proof of claim were the Loan documents and the pertinent Certificate of Title. Vanderbilt objected to the Plan on June 5, 2017, asserting that the value of the Manufactured Home was significantly more than what the Blackwells estimated.

The Court held an evidentiary hearing on the Plan and the Objection on February 7, 2018. Vanderbilt tendered its appraisal with photographs of the property as Vanderbilt's Exhibit 1 ("Vanderbilt's Appraisal") and adduced the testimony of its appraiser, Walter Banks. Additionally, Vanderbilt called the Vanderbilts's land appraiser, Eddie Estep, who tendered his land appraisal as Vanderbilt's Exhibit 2 ("Vanderbilt's Land Appraisal"). The Blackwell's counsel

tendered his appraisal with photographs of the property as Debtor's Exhibit 1 ("Debtor's Appraisal") and adduced the testimony of his clients' appraiser, Robert Linkous. Mr. Blackwell also testified about the condition of the Manufactured Home.

The Blackwells stipulated to Vanderbilt's Land Appraisal that valued the Real Estate at $18,000. Vanderbilt's Appraisal valued the Manufactured Home at $16,800. Debtor's Appraisal valued the Manufactured Home at $5,000.

## II.

**A.    Governing Standard**

This is a core proceeding pursuant to 28 U.S.C. § 157, as the matter arises under 11 U.S.C. §§ 506(a) and 1325(a)(5)(B). The Court is vested with subject jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

The question of value is addressed in 11 U.S.C. § 506(a), which states that

> (1) [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> (2) If the Debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that

>   kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §§ 506(a)(1)-(2) (2012).

Following the enactment of § 506(a)(2) in 2005 as a part of BAPCPA, bankruptcy courts struggled with calculation of "retail value," or, the value a retail merchant would charge. In the quest to assign a number to that value in any case, a Court must hear and evaluate testimony in accordance with the qualification and credibility of expert witnesses. *In re Prewitt*, No. 15-60222, 2015 Bankr. LEXIS 4124, at *15 (Bankr. E.D. Tex. Dec. 8, 2015) (*citing In re Wright*, 460 B.R. 581, 584 (Bankr. E.D.N.Y. 2011); *In re Grind Coffee & Nosh, LLC*, 2011 Bankr. LEXIS 1335, at *6 (Bankr. S.D. Miss. Apr. 4, 2011)).

Often, multiple appraisers provide conflicting valuations, and "[w]hen two appraisal reports conflict, a court must determine the value based on the credibility of the appraisers, the logic of their analys[es] and the persuasiveness of their subjective reasoning." *In re 3G Props., LLC*, No. 10-04763-8-JRL, 2011 Bankr. LEXIS 4634, at * 20-21 (Bankr. E.D.N.C. July 12, 2011) (*quoting In re Sailboat Props., LLC*, No. 10-03718-8-SWH, 2011 Bankr. LEXIS 1316, at *17 (E.D.N.C. Mar. 31, 2011)). Several factors have emerged to assist courts in weighing conflicting appraisal testimony. Those factors include: the appraiser's education, training, experience, familiarity with the subject of the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented. *Prewitt*, at *15 (*quoting Anderson v. Mega Lift Sys., LLC (In re Mega Systems, LLC)*, 2007 Bankr. LEXIS 1957, at *8 (Bankr. E.D. Tex., June 4, 2007)); *In re Smith*, 267 B.R. 568, 573-73 (Bankr. S.D. Ohio 2001). However, it is important to note that a court need not wholly accept the value of one appraiser over another – it can arrive at its own conclusion as to value based on its own interpretation of the evidence. *In re Breakwater Shores Partners, L.P.*, No. 10-61254,

2012 Bankr. LEXIS 1454, at *33 (Bankr. E.D. Tex. Apr. 5, 2012) (*citing in re Holcomb Health Care Servs., LLC*, 329 B.R. 622, 669 (Bankr. M.D. Tenn. 2004)); *see generally Sailboat Props.*, 2011 Bankr. LEXIS 1316.

And, if valuation testimony is provided by a property owner, that testimony is admissible, "but to sway the Court it must be persuasive." *In re Tucker*, No. 12-05872-HB, 2013 Bankr. LEXIS, at * 9 (Bankr. D.S.C. Jan. 25, 2013).

**B.     Analysis**

Vanderbilt's Manufactured Home appraiser, Mr. Banks, testified first. Mr. Banks personally inspected the Manufactured Home in order to ascertain its condition. Based on his observations of the Manufactured Home, he used the National Appraisal Services ("NAS") worksheet to arrive at a valuation of $16,800. Mr. Banks stated that the Manufactured Home was in a state of disrepair. He noted that there were animals inside the home and a musty smell. In spite of the Manufactured Home requiring a considerable amount of repairs and being in a state of disrepair, Mr. Banks concluded that it was in fair condition. Some of the repairs he suggested were to the roof, furnace, underpinning, and walls. Mr. Banks also remarked that the floor coverings, missing door, and missing window needed replaced. Despite needing extensive repairs, Mr. Banks believed the home had physical life of a remaining 28 years.

By contrast, the Debtors' appraiser, Mr. Linkous, testified that the Manufactured Home was not livable and is a salvage unit that should be valued at no more than $5,000. Mr. Linkous reached this figure by personally inspecting the home and using the National Automobile Dealers Association ("NADA") guide for manufactured homes. In addition to the repairs that Mr. Banks cited, Mr. Linkous stated that the subfloor and a soffit needed repaired or replaced. He also

5

noted that there was water damage to the ceiling that indicated a roof leak and there was exposed plumbing in the bathroom.

In addition, Mr. Blackwell also testified about the condition of the Manufactured Home. He stated that the Manufactured Home does not have heat and that it is being heated by the electric stove. Mr. Blackwell also informed the Court that his daughter and grandchild had been removed from the house by Child Protective Services ("CPS") because those governmental officials deemed the home to be uninhabitable.

C.     **Conclusion**

Based on the evidence adduced, and for the reasons set forth herein, the Court accepts the valuation provided in Vanderbilt's Land Appraisal and finds that the value of the Blackwell's Real Estate is $18,000. Additionally, the Court's decision concerning valuation of the Manufactured Home is heavily influenced by several factors including the presence of animals, the water damage, the conditions of the lavatory, the exposed plumbing, and the inoperable furnace. Presently, the Manufactured Home would not satisfy even the minimal warranty of habitability as required by § 37-6-30 of the West Virginia Code. Accordingly, the Court accepts the valuation provided by the Debtor's Chapter 13 Plan and finds that the value of the 2009 Fleetwood Manufactured Home is $5,000. Thus, the Blackwells' Chapter 13 Plan does not stand in a confirmable posture at this time. Accordingly, it is

**ORDERED** that the 2009 Fleetwood Manufactured Home is worth $5,000 and the Real Estate is worth $18,000 for the purposes of plan confirmation.

**IT IS FURTHER ORDERED** that Confirmation of the Debtors' Chapter 13 Plan is **DENIED.** The Debtors are instructed to file an amended plan within 60 days of entry of this Memorandum Opinion and Order.